[Civ. No. 21578.   First Dist., Div. Three.   Mar. 31, 1965.]

ROBERT HORA, Plaintiff and Respondent, v. THE CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Appellants.

Thomas M. O'Connor, City Attorney, and Robert A. Kenealey, Deputy City Attorney, for Defendants and Appellants.

Sullivan, Sullivan & Sullivan and Warren Sullivan for Plaintiff and Respondent.

DEVINE, J.—Robert Hora applied to the city health department for a license to operate a massage parlor at 1141 Market Street, San Francisco. The department refused to issue the permit. He appealed to the Board of Permit Appeals, which, after a hearing, sustained the department's ruling. Petition for reconsideration was made and was denied. Petition for writ of mandate followed. It was granted, and the city and certain of its officers appeal.

The applicant did not request that a record of the proceedings before the board be made. The judge did not have, and of course we do not have, a reporter's transcript. Nor did the judge have, nor do we, an agreed statement of the evidence which was before the board. Respondent on this appeal asserts, however, that this lack is of no significance because, he says, appellants represented that all of the evidence before the board was before the court. There is no doubt that the principal evidence, by far, which was presented by the police department against granting of the permit, was the fact that a massage parlor had been operated at 1141 Market Street by Hora's wife, that she had been arrested twice for morals violations at the premises, and that following the second of the arrests she was convicted of violation of section 315 of the Penal Code (keeping or residing in a house of ill-fame resorted to for prostitution or lewdness) and section 647, subdivision (a) of the Penal Code (soliciting anyone to engage in, or engaging in, lewd or dissolute conduct in any public place or place open to the public or exposed to public view). But what other evidence there was before the Board of Permit Appeals, is something we cannot be sure of. Although at one point the city attorney told the judge that the evidence on which the license was denied was in the file before him, at another point he told the court that not all of the record was

available. We are satisfied, however, that the evidence which was submitted to the court as at least part of the evidence which had been presented to the board, is substantial evidence on which the denial of the license could be made.

The court found that the only evidence adduced before the board concerned applicant's wife; and that ''no substantial evidence was adduced and in fact no evidence whatsoever was adduced on which to base a refusal to issue to petitioner a license to operate and conduct a massage parlor and that such issuance would adversely affect the public interest, morals or welfare of the people of the City and County of San Francisco.''

The judge ordered that a peremptory writ of mandate issue compelling the city and its officers to issue to Hora a license to operate a massage parlor.

The evidence about the operation of the massage parlor while applicant's wife was in charge is contained in a police department file which was submitted to the Board of Permit Appeals and was admitted as an exhibit to the court. It shows that on December 13, 1961, an undercover police officer was admitted to the waiting room of Mrs. Hora's massage parlor, was taken by a 26-year-old female to another room and was massaged in a lewd manner. She was arrested. She told the officer that Mrs. Hora had told her she must do this because male customers had complained that it had not been done; that there was nothing wrong in doing it. Another female employee, 24 years old, said she had been instructed by Mrs. Hora to do the same thing, but not until she had finished training and had been checked out by the police. Mrs. Hora at first admitted, then denied, that she knew what was going on. Mrs. Hora was arrested and charged with violation of section 315 of the Penal Code and certain municipal ordinances. It is admitted by the city attorney that these charges were later dismissed.

On March 7, 1962, while charges were still pending on the former arrest, another officer was admitted to the parlor by Mrs. Hora. A female employee, not one of the two engaged in the first incident, performed a lewd massage very soon after she commenced the ''massage.'' A male visitor told the police that Mrs. Hora had just performed a lewd act on him and that she had done so on other occasions. The massage price was $6. It was the opinion of the reporting officers that no genuine massage was given to customers. Mrs. Hora was arrested again, and was convicted.

What is known about Mr. Hora, so far as the record before the board shows, is only that he has no record of arrests. Counsel for applicant gave a bit more information to the court, some of which he asserted had been presented to the board. It is meager, anyway. If all of it were before the board, it was no more than this: The Horas were war refugees from Czechoslovakia. They met and married in Australia. Mr. Hora worked as a timekeeper. He ''had nothing to do with the massage parlor at the time that some events in question took place.'' He had been an amateur champion in certain athletics in Europe and Australia. He understood the importance of physical well-being and muscle tone. He had some training as a masseur, and counsel asserted he understands and conducts the profession of masseur. He has a certificate from the California School of Massage (which is unidentified). He came to the parlor from time to time to call for his wife. He was on the premises when an arrest (the second one, it would seem) of his wife was made. He entered after the officers had come in.

Counsel told the court, and said he had told the board, that if a license were granted, Mrs. Hora would have no connection with the establishment and would not go on the premises. There is equipment worth about $5,000 on the premises, he said.

The chief of police recommended to the board that the application be denied. He said that the business has been a police problem. It was apparent, he said, that the current location would be operated by the former operator, Mrs. Hora.

Section 237 of the San Francisco Health Code (S.F.Mun. Code, pt. II, ch. V) provides, in part, as follows: ''The Department of Public Health shall not issue a permit for the operation or maintenance of a massage parlor unless it be satisfied that the facilities of the establishment are adequate, the personnel is properly trained, and the moral character of the applicant or applicants is such that the maintenance and operation of a massage parlor by said applicant or applicants will not adversely affect the public interest, morals or welfare. The Police Department shall on request indicate to the Director of Public Health its approval or disapproval of the applicant on moral grounds.''

■ In deciding this appeal, we start with the basic law that the decision of the Board of Permit Appeals must be sustained if it is supported by substantial evidence. (*Iscoff* v. *Police Com.*, 222 Cal.App.2d 395, 410 [35 Cal.Rptr. 189]; *Greif* v. *Dullea*, 66 Cal.App.2d 986, 1007 [153 P.2d 581].)

■ As a second proposition, we observe that ruling on an application for a license, initiated by an applicant, is far different from a penalty proceeding to revoke or cancel, commenced by a governmental body. (*Sica* v. *Board of Police Comrs.*, 200 Cal.App.2d 137, 141, 142 [19 Cal.Rptr. 277].) It is still farther removed from criminal prosecution.

As corollary to the distinction between proceedings on application for license and proceedings to revoke, the burden of proof may properly be placed, in the former, on the applicant. (*Martin* v. *Alcoholic Beverage Control Appeals Board*, 52 Cal.2d 259, 265 [341 P.2d 291].) ■ We have no doubt that the ordinance, which requires that the licensing authority "be satisfied" of the adequacy of facilities, training of personnel and moral character of the applicant, places the burden on the applicant.

■ It is reasonable, next, to hold that the proof submitted be of considerable substance if the business is one where abuses of morality and violations of law may readily exist, unless the operators are of good character. That massage parlors are such appears from their nature, from the letter of the police chief in this case, and from the reports of the arresting officers. As further evidence of the sensitive nature of the occupation, the ordinance requires owners to report the name of each new employee within 48 hours to the Department of Public Health.

■ There were reasons, in this case, beyond the ones which require particular care in scrutinizing applicants in this supervised profession. The facts that the same place would be used, that the proprietor would have the same name, that former patrons might return and that personnel free from illegal practices would have to be obtained, made it necessary for the licensing authorities to have convincing evidence in order to satisfy themselves of the applicant's character.

What, then, did the applicant say to the Board of Permit Appeals about his wife's operation? Did he disclaim knowledge, before the first arrest, of such acts as were reported by the police on December 13, 1961? We find no such disclaimer. Did he disclaim knowledge of the first arrest? Or knowledge of the nature of the operation after the first arrest? We find no disclaimer. At the trial, it seems to have been the position of the applicant that guilty knowledge must be proved against him, as in a criminal case, or at least in a revocation hearing. This reverses the burden of proof. ■ It is not necessary that it be shown that the applicant's character is faulty. The applicant must satisfy the board; and we think that good

character here means not only freedom from arrests or accusations, but also vigilance to protect others closely associated with the applicant from wrongdoing in their occupation. If the applicant was ignorant of his wife's trouble with the law in December 1961, the board could find him lacking in such vigilance.

The earnings of the wife were community property during the operation, and if the license were granted to the husband, his earnings presumably would be community property. The association is not merely one of domestic ties but also of property interest.

The promise of applicant, made by his counsel, that his wife would not enter the premises or have anything to do with the business, need not have had persuasive effect with the board. In the first place, the burden of proof would shift if the license were granted. (*Sica* v. *Board of Police Comrs., supra,* 200 Cal.App.2d 137.) In the second place, the ordinance, section 237 of the San Francisco Health Code, is specific in its description of the conduct which justifies revocation, and it is doubtful that the applicant can add to the causes for revocation by a prelicensing pledge.

Evidence before the board consists not only in what was produced but also in the inferences which the board reasonably could draw from omission to produce evidence which the applicant had it in his power to offer. The board acted on substantial evidence.

Judgment reversed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied April 30, 1965, and respondent's petition for a hearing by the Supreme Court was denied May 26, 1965.